UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RIMINI STREET, INC., a Nevada corporation,<br><br>      Petitioner,<br><br>  v.<br><br>AMAZON WEB SERVICES, INC., a Delaware corporation,<br><br>      Respondent. | No.  2:18-mc-00037-RSL<br><br>**MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**<br><br>Underlying case:  *Rimini Street, Inc. v. Oracle Int'l Corp. et al.*, No. 2:14-cv-01699-LRH-CWH (D. Nev.)<br><br>**Note on Motion Calendar**<br>**April 13, 2018** |

## I. INTRODUCTION

This is a motion to compel Amazon's compliance with a third-party subpoena issued by Rimini Street, Inc. ("Rimini") in litigation pending against Oracle International Corporation and Oracle America, Inc. (collectively "Oracle") in the United States District Court for the District of Nevada.  Rimini is an *independent* provider of support services for enterprise software platforms used by corporations, including Fortune 500 companies, as well as numerous government, public sector, and non-profit organizations located throughout the world.  (*See* Declaration of W. West Allen (the "Allen Decl."), submitted herewith, ¶ 2.)

MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA
NO.
Page 1



1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1    Oracle is the world's largest enterprise software company. (*Id.* ¶ 3.) Although
2  Oracle owns copyrights in its software, Oracle owns no intellectual property giving it a right
3  to exclude Rimini or anyone else from supporting the software. (*Id.*) Rather, just as a driver
4  may take a car to an independent mechanic rather than the dealership, software users can
5  secure support from providers other than the developer. (*Id.*) Rimini is such a third party
6  support provider and is Oracle's primary competitor for support services. (*Id.*)

7    Since Rimini's inception in 2005, Rimini and Oracle have been locked in an
8  adversarial relationship. (*Id.* ¶ 4.) On January 25, 2010, Oracle sued Rimini and its CEO
9  Seth Ravin in the United States District Court for the District of Nevada in an action styled,
10 *Oracle USA, Inc. v. Rimini Street, Inc.*, No. 2:10-cv-0106-LRH-PAL ("*Rimini I*"). (*Id.*) In
11 February 2014, during *Rimini I*, the District of Nevada held that certain of Rimini's support
12 processes at the time were not permitted by Oracle's license agreements. (*Id.*) In response
13 to the Court's order, Rimini transitioned to its revised support processes by August 1, 2014.
14 (*Id.*) On October 15, 2014, Rimini initiated *Rimini Street, Inc. v. Oracle USA, Inc.*, No.
15 2:14-cv-01699-LRH-CWH, in the United States District Court for the District of Nevada
16 ("*Rimini II*") in an effort to bring clarity and certainty regarding the legality of Rimini's
17 revised support processes. (*Id.* & Ex. A.)

18    In *Rimini II*, Rimini seeks, among other relief, a judicial declaration that its new
19 support processes do not infringe Oracle's copyrights. (*See generally id.* & Ex. A.) On
20 February 17, 2015, Oracle filed, among other counterclaims, a counterclaim alleging, *inter
21 alia*, that Rimini's new processes continue to infringe Oracle's copyrights. (*See id.* ¶ 5 &
22 Ex. B (*Rimini II*, ECF No. 397, Oracle's 3d Am. Countercls.))

23    Rimini seeks an order compelling Amazon to produce the requested documents or to
24 certify under oath that all requested documents were produced by Oracle in *Rimini II*.
25 Counsel for Rimini and Amazon have conferred on several occasions, and, particularly in
26 light of the March 28, 2018 deadline for filing motions to compel, have been unable to

MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA
NO.
Page 2

YARMUTH WILSDON PLLC
1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

resolve the discovery dispute that exists between them.

## II. FACTUAL BACKGROUND

### A. History of the Rimini and Oracle Dispute

*Rimini II* is the latest chapter in Oracle's attempt to slow Rimini's growth and protect Oracle's inflated profits. (*See id.* Ex. A (*Rimini II*, ECF No. 487, 3d Am. Compl.) ¶ 9.) Oracle's harassment and anticompetitive tactics to stave off competition from Rimini began soon after Rimini's inception. (*Id.*) Indeed, within days following Rimini's announced service offering for Oracle's Siebel software in 2005, Oracle sent a threatening letter to Rimini, and such threatening and hostile letters continued from 2005 to 2009. (*Id.*) During this same period, Oracle refused each and every one of Rimini's offers to meet "anywhere, any time" to attempt a resolution of any Oracle concerns. (*Id.*)

Oracle also took a number of anticompetitive steps designed to make it more difficult and costly for independent aftermarket support providers to compete and service their Oracle licensee clients. (*Id.* ¶ 10.) For example, in 2007, Oracle changed its website terms of use to preclude third-party support providers like Rimini from using automated tools to assist clients in downloading the potentially thousands of software support files from Oracle's website to which the clients were entitled, and had paid Oracle for in full, requiring instead that substantial additional time and labor resources be expended to download the same (client-entitled and fully-paid-for) files manually. (*Id.*)

Despite Oracle's anticompetitive conduct between 2005 and 2009, licensees continued to turn to Rimini in record numbers to escape Oracle's punitive business practices, unresponsive service, and costly support model. (*Id.* ¶ 11.) So, on January 25, 2010, Oracle sued Rimini for copyright infringement (the "*Rimini I*" case) and 11 other causes of action for alleged business misconduct. (*Id.*)

Three days after Oracle filed its complaint, Oracle's then-Executive Vice President of Customer Services, Juergen Rottler, was quoted in an article threatening third parties that

MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA
NO.
Page 3

YARMUTH WILSDON PLLC
1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1  dare compete with Oracle for aftermarket service of Oracle's products, stating, "We believe
2  we should be the ones to support our customers, . . . If you're a third party support provider
3  offering multivendor support, we're coming.  We're coming." (*Id*. ¶ 12.)

4  Rimini did not believe it was infringing any Oracle copyrights, and had no interest
5  in infringing Oracle's copyrights or engaging in any wrongful conduct.  (*Id*. ¶ 13.)  After
6  years of litigation, Rimini was found liable for infringing specific Oracle copyrights based
7  on its use of certain legacy support processes.  (*Id*.)  The jury specifically found that Rimini
8  did not "willfully" infringe any of Oracle's copyrights, and instead found that Rimini's
9  infringement was "innocent" (meaning that Rimini "was not aware that its acts constituted
10 infringement" and "had no reason to believe that its acts constituted infringement").  (*Id*.)
11 Rimini was also found liable for continuing to use automated tools to download files from
12 Oracle's websites for a brief period after Oracle changed its website terms of use to prohibit
13 the use of such tools.  (*Id*.)

14 The jury rejected Oracle's claim that Mr. Ravin was vicariously or personally liable
15 for any of the innocent infringement, rejected Oracle's damages claim of $249 million, and
16 instead awarded only $50 million, which included a Fair Market Value License for the use
17 of Oracle's copyrighted works.  (*Id*. ¶ 14.)  Further, the jury found that Oracle suffered no
18 lost profits as a result of the "innocent" infringement, it rejected all of Oracle's claims for
19 tortious interference, and it refused to award Oracle punitive damages.  (*Id*.)  In the end,
20 Oracle withdrew or lost 9 out of the 12 claims it pursued aggressively against Rimini for
21 years.  (*Id*.)

22 Oracle did not publicize these findings by the jury, and instead mounted a campaign
23 to misrepresent to Rimini's clients and prospective clients the results of the litigation and
24 the nature of Rimini's support services.  (*Id*. ¶ 15.)

25 While Rimini respectfully disagrees with the District Court's findings, it has
26 complied with the support process changes required by the District Court, has paid the

MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA
NO.
Page 4

YARMUTH WILSDON PLLC
1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1  judgment to Oracle in full, and pursued an appeal of the judgment in the Ninth Circuit
2  Court of Appeals.  The Ninth Circuit recently *reversed* the District Court's finding that
3  Rimini's use of automated tools to download files from Oracle's websites for a brief period
4  after Oracle changed its website terms of use amounted to computer hacking under the
5  California and Nevada anti-hacking statutes, and vacated and remanded back to the District
6  Court the permanent injunction and attorneys' fees award.  *Oracle USA, Inc. v. Rimini*
7  *Street, Inc.*, 879 F.3d 948, 962, 964–65 (9th Cir. 2018).  The Ninth Circuit affirmed the
8  innocent infringement verdict on narrow grounds.  *Id*. at 953–59.

9  Since the *Rimini I* trial ended in October 2015, Rimini's growth has accelerated, it
10 has launched support for additional Oracle product lines, and it continues to expand its
11 operations.  (*See* Allen Decl., Ex. A (*Rimini II*, ECF No. 487, 3d Am. Compl.) ¶ 17.)  But,
12 undoubtedly in response to Rimini's continued growth and success, Oracle has expanded its
13 efforts to interfere with Rimini's current and prospective relationships with clients.  (*Id*.)

14 Despite the modifications Rimini has made to its processes to ensure compliance
15 with the District of Nevada's orders in *Rimini I* and with Oracle's software licenses, and
16 although Oracle's most senior executives have conceded publicly and under oath, as they
17 must, that Oracle licensees are free to use third parties instead of Oracle for their
18 aftermarket support needs (or even "self-support" without any outside assistance), Oracle
19 clearly wants to keep potential competitors and Oracle licensees guessing about how to
20 comply with Oracle's complex licensing rules.  (*Id*. ¶ 18.)  To this day, after a decade of
21 harassment and litigation, Oracle still refuses to tell its licensees what practices it views as
22 proper.  (*Id*.)

23 Rimini brought *Rimini II* seeking a declaration that its current processes do not
24 infringe Oracle's copyrights.  (*Id*. ¶ 19.)  In addition, Rimini wants a level, fair market
25 playing field.  (*Id*. ¶ 20.)  Thus, Rimini also brought *Rimini II* to put a stop to Oracle's
26 deceptive and anticompetitive conduct and practices that are designed to slow Rimini's

MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA
NO.
Page 5

YARMUTH WILSDON PLLC
1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

growth and foreclose competition in aftermarket support for Oracle's software products. (*Id*.)

Oracle says that it invites fair and open competition, but its actions prove otherwise. (*Id*. ¶ 21.) Indeed, there is overwhelming evidence that Oracle has orchestrated and implemented a scheme to disparage Rimini and its services with false and misleading statements to Rimini's current and prospective clients. (*Id*.) For example, Oracle knows that Rimini and other third parties may legally provide support for Oracle software and that Oracle licensees may legally purchase third-party support. (*Id*.) As Oracle's own co-CEO testified under oath during the *Rimini I* trial, "customers are free to use someone other than Oracle for their maintenance and support[,]" and "[i]t is the customer's choice." (*Id*.) But privately, Oracle tells its customers something very different. (*Id*.) Oracle also makes numerous false and deceptive statements regarding Rimini's services, in order to interfere with and slow Rimini's growth and to foreclose competition in aftermarket service for Oracle's software products. (*Id*.)

On January 17, 2017, Oracle sent Rimini a letter providing Rimini 60 days' notice of its intent to "terminate and revoke any and all permissions, licenses and rights that [Rimini] has been granted to access Oracle's support websites." (*Id*. ¶ 22.) Despite being fully aware that Rimini has offered support services to its clients for more than a decade, and despite having brought dozens of claims against Rimini in litigation since 2010, Oracle had never claimed, prior to sending this letter, that it was improper for its customers to use Rimini to archive software materials from Oracle's support websites, to which those customers are entitled. (*Id*.)

In *Rimini II*, Rimini seeks, in part, a declaration that Oracle's notice of revocation of Rimini's access to Oracle's support websites constitutes copyright misuse, and that Rimini's continued access to those websites would not constitute hacking under the federal, California, or Nevada anti-hacking laws. (*Id*. ¶ 23.)
MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA
NO.
Page 6



1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800    F 206.516.3888

     **B.**     **Rimini's Subpoena to Amazon**

Amazon has failed to produce the documents Rimini requested in its subpoena, principally claiming that the documents were produced by Oracle in *Rimini II*. (*See* Allen Decl. ¶¶ 7–16.) However, Rimini has not been able to confirm that the requested documents were produced by Oracle in *Rimini II*. (*Id*. ¶ 16.) In addition, Amazon has not certified that all responsive documents were produced by Oracle in *Rimini II*. (*Id*. ¶¶ 16-17, 19.) Further, the deadline for Rimini to file motions to compel third parties to comply with subpoenas is March 28, 2018. (*Id*. ¶ 18.) Accordingly, Rimini now seeks an order compelling Amazon to produce documents responsive to the subpoena or certify that all responsive documents have been produced by Oracle in *Rimini II*.

**III.**     **ARGUMENT AND AUTHORITIES**

"'The purpose of discovery is to provide a mechanism for making relevant information available to the litigants.'" *Burlington N. & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1148–49 (9th Cir. 2005) (quoting Rule 26 advisory committee's note (1983 amendment)). Rule 26 of the Federal Rules of Civil Procedure sets forth the scope of discovery parties may obtain: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

When a non-party fails to provide discovery requested by subpoena, the requesting party may move to compel that discovery. *See* Fed. R. Civ. P. 45(d)(2)(B)(i) ("At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection"); *see also* Fed. R. Civ. P. 37(a) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery").

The "party resisting discovery bears the burden of showing why a discovery request should be denied." *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013).

MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA
NO.
Page 7

YARMUTH WILSDON PLLC
1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

Specifically, "[t]he party opposing discovery bears the burden of showing the discovery is overly broad and unduly burdensome, or not relevant." *Kawamura v. Boyd Gaming Corp.*, No. 2:13-cv-00203-JCM-GWF, 2014 U.S. Dist. LEXIS 112040, at *10 (D. Nev. Aug. 13, 2014). The Court has broad discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

     **A.    Rimini's Subpoena Seeks Documents That Are Directly Relevant to its Claims in *Rimini II*.**

Rimini alleges eight causes of action in *Rimini II*. (*See* Allen Decl., Ex. A (*Rimini II*, ECF No. 487, 3d Am. Compl.).) Of these, Counts I, II, III, IV, and V are most relevant to the present motion.

In Count I, Rimini seeks a declaration that the new methods and procedures it put in place—in response to the District of Nevada's orders in *Rimini I* and through which Rimini continues to provide support services to Oracle licensees—do not infringe Oracle's copyrights in its software. (*See id.* ¶ 109.)

In Count II, Rimini seeks a declaration that "any access to, use of, and downloading from, the Oracle Websites after March 18, 2017 as authorized by Rimini's clients does not violate the federal, California, or Nevada anti-hacking statutes." (*Id.* ¶ 119.)

In Count III, Rimini seeks a declaration that Oracle's attempted revocation of Rimini's access to the Oracle Websites constitutes copyright misuse and that Oracle's copyrights are unenforceable until it withdraws its revocation of Rimini's access to the Oracle Websites. (*Id.* ¶¶ 122–23.)

In Count IV, Rimini alleges a cause of action against Oracle for intentional interference with Rimini's contractual relationships with its clients. The Third Amended Complaint alleges that Rimini has maintained valid contracts with clients to provide aftermarket support services for software that its clients had licensed from Oracle and that Oracle has contacted a number of Rimini's clients directly regarding their use of Rimini's

MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA
NO.
Page 8



1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1  software support services. (*Id*. ¶¶ 125–126.) The Third Amended Complaint continues,
2  alleging that:

> Oracle has engaged in a concerted campaign to create fear, uncertainty, and doubt among Rimini's clients and to interfere with and disrupt the valid contracts between Rimini and its clients . . . Oracle's campaign includes, without limitation, numerous false and misleading representations regarding Rimini's software support services and targeting Rimini's clients with threats of selective license audits, and Oracle's purported revocation of Rimini's ability to access the Oracle Websites on behalf of Rimini's clients, which Rimini has agreed to do by contract.
>
> Oracle's actions are designed to induce Rimini's clients to breach their contracts with Rimini or, at a minimum, to disrupt those contracts in order for Oracle to obtain an unfair competitive advantage over Rimini.

(*Id*. ¶¶ 127–28.)

Count V alleges the same conduct with respect to its prospective clients. (*Id*. ¶¶ 133–36.)

The subpoena seeks information directly relevant these causes of action. The subpoena contains fourteen subparts, but in sum, generally seeks: (1) documents concerning "AWS Cloud Systems" for Oracle software; (2) documents concerning Amazon's "certification and support of Oracle applications on Amazon's Elastic Compute Cloud;" and (3) documents concerning "Oracle Competency Partners" that manage Oracle based workloads running on the AWS Cloud, as identified in Exhibits 1 through 3 to the subpoena's Exhibit A. (Allen Decl. ¶ 7 & Ex. E.)

Through its subpoena, Rimini is seeking, among others, Amazon internal documents that show or tend to show Oracle did not object to its licensees utilizing cloud-based services to store and update their licensed Oracle software. Rimini believes the requested documents will show or tend to show that Oracle regularly permitted its licensees to use such cloud-based services and only objected to its licensees' use of such services when Oracle licensees contracted with or were considering contracting with Rimini for its support services. These documents are relevant to Rimini's causes of action seeking declaratory

MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA
NO.
Page 9

YARMUTH WILSDON PLLC
1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

relief, it claims alleging interference with its existing and prospective clients, and its other causes of action.

### B. Rimini's Requests Do Not Pose an Undue Burden on Amazon.

"The burden for proving that a subpoena is oppressive . . . is a heavy one." *Plant Genetic Sys., N.V. v. Northrup King Co., Inc.*, 6 F. Supp. 2d 859, 862 (E.D. Mo. 1998). Here, Amazon cannot meet its burden.

#### 1. Amazon is Likely to Have Documents Not Previously Produced in *Rimini II*.

In the parties' meet and confer communications, Amazon argued that Rimini's subpoena is unduly burdensome, as the information sought from Amazon is also available from Oracle in *Rimini II*. As an initial matter, "there is no general rule that [a party] cannot seek nonparty discovery of documents likely to be in [another party's] possession." *Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 0880129 SI, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008). Instead, courts will order nonparties to produce documents likely to be in a party's possession where, as here, there is reason to believe that the nonparty's file may contain material that has not been produced by the parties. *See*, *e.g.*, *id.* (ordering a third party to produce documents that were likely in defendant-party's possession, when the plaintiff-party raised valid questions about the completeness of that party's file retention and document production); *Plant Genetic Sys.*, 6 F. Supp. 2d at 862 (ordering the production of documents from a nonparty, despite arguments that the documents were in the possession of another party to the action, when the requesting party demonstrated that multiple discovery efforts in the underlying action had failed to produce the requested documents).

Here, at the request of Magistrate Judge Leen in *Rimini II*, the parties retained a third-party e-discovery neutral to facilitate the development of a "Technology Assisted Review" ("TAR") process. (*See* Allen Decl. ¶ 6 & Exs. C & D (*Rimini II*, ECF Nos. 102 &

MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA
NO.
Page 10



1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

106).)  The resulting TAR protocol is complex, but generally works this way:  attorneys first coded a sample "seed set" of documents as "responsive" or "non-responsive" to RFPs propounded up to that date.  (*Id.*)  A predictive coding software program analyzed keywords and other document features from that coding in order to create an automated predictive model that could be used to review subsequent documents without human involvement.  (*Id.*)  Documents collected from previously agreed-upon custodians were put into this predictive coding software program for review, and the parties agreed to treat whatever the software deemed responsive as responsive for purposes of discovery in this case.  (*Id.*)  Because of this TAR protocol, it is entirely possible and even likely that there are documents related to Amazon that were not identified by the predictive coding, or were not in the document set of one of the pre-approved custodians, and, therefore, were not produced by Oracle.

Moreover, to the extent the subpoena seeks Amazon's internal documents and discussions concerning the deployment of Oracle Software on AWS Cloud Systems, which it does, those documents could not have been produced by Oracle in *Rimini II* because those documents, by definition, are not within Oracle's possession, custody, or control.

### 2. Rimini's Subpoena Is Not Burdensome Simply Because It May Result in a Number of Potentially Responsive Documents.

Amazon's argument that the subpoena is overly burdensome because it would require Amazon to search a high number of potentially responsive documents is equally unconvincing.  Courts have routinely found that a party objecting to a subpoena fails to meet its burden by arguing that the subpoena will result in a high number of potentially responsive documents since, "volume alone is not determinative."  *See Northrup Corp. v. McDonnell Douglas Corp.*, 751 F. 2d 395, 404 (D.C. Cir. 1984) (reversing a district court decision to quash a subpoena, finding that the opposing party failed to meet its burden by arguing that the volume of documents it would be required to search was oppressive); *U.S.*

MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA
NO.
Page 11

YARMUTH WILSDON PLLC
1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   *Dep't of the Treasury v. Pension Benefit Guar.*, 301 F.R.D. 20, 28 (D.D.C. 2014)
2   ("Although Treasury claims it will have to search a significant number of documents to
3   respond to the subpoena, 'volume alone is not determinative.'").  Here, the fact that
4   Amazon will have to review a number of potentially relevant documents in order to respond
5   to Rimini's subpoena does not render the subpoena overly burdensome.  Moreover, Rimini
6   has attempted to meet and confer with Amazon in an effort to reduce the burden on
7   Amazon.  (Allen Decl. ¶¶ 10-17.)  *See U.S. Dep't of the Treasury*, 301 F.R.D. at 28 (finding
8   that the requesting party's efforts to modify the scope of the subpoena were relevant in
9   deciding whether claims of undue burden were valid).

10   Finally, to the extent Amazon requires additional time to comply with Rimini's
11   subpoena, Rimini is amenable to providing Amazon that leeway.  However, given the
12   District of Nevada's Minute Order (Allen Decl., Ex. M), which requires the parties to file,
13   by March 28, 2018, all motions to compel third parties to produce documents in response to
14   subpoenas, Rimini was required to file this Motion now, in order to protect its interests.

15   **IV.   CONCLUSION**

16   For the foregoing reasons, the Court should enter an order compelling Amazon to
17   produce the requested documents or to certify under oath that all requested documents were
18   produced by Oracle in *Rimini II*.

19   DATED this 28th day of March, 2018.

**YARMUTH WILSDON PLLC**

By: *s/ Jeremy E. Roller*
Jeremy E. Roller, WSBA No. 32021
1420 Fifth Avenue, Suite 1400
Seattle, WA 98101
Telephone: (206) 516-3800
Fax: (206) 516-3888
jroller@yarmuth.com

*Attorneys for Petitioner Rimini Street, Inc.*

MOTION TO COMPEL COMPLIANCE
WITH SUBPOENA
NO.
Page 12
1057.01 sc280607 3/28/18



1420 FIFTH AVENUE, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888